**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YOLANDA GUZMAN, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 19-cv-2338 (DLF) |
| GF, INC., d/b/a IL CANALE, *et al.*, | |
| *Defendants.* | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The plaintiffs are individuals who worked as servers, bartenders, and bussers for the defendants' restaurant, Il Canale.  They bring this action against the defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, the D.C. Minimum Wage Act Revision Act of 1992 (DCMWA), D.C. Code § 32-1001, *et seq.*, and the D.C. Wage Payment and Collection Law (DCWPCL), D.C. Code § 32-1301, *et seq.*, alleging the plaintiffs were not paid the effective minimum wage or overtime pay and that the defendants violated the relevant wage protection statutes by failing to provide certain required notices.  Before the Court is the plaintiffs' Motion for Conditional Certification of a Collective Action and Notice to Potential Plaintiffs (Pls.' Mot.), Dkt. 23.  For the reasons that follow, the Court will grant in part and deny in part the plaintiffs' motion.

## I.   BACKGROUND

According to the complaint and the plaintiffs' affidavits, Il Canale is a large Italian restaurant operating in the District of Columbia, owned and operated by Giuseppe Farruggio and managed by Alessandro Farruggio (collectively, "defendants").  Guzman Aff. ¶¶ 1–3, Dkt. 23-1.

Plaintiff Yolanda Guzman worked at Il Canale as a busser, *id.* ¶ 4, and plaintiff Eneias Aboubacar worked as a server and filled in as a bartender, Aboubacar Aff. ¶ 3, Dkt. 23-2.

The plaintiffs allege that the defendants paid tipped employees—bussers, servers, and bartenders—"below the minimum wage, while similarly failing to meet the requirements to off-set their minimum wage obligations with a legal 'tip credit.'"  Pls.' Mot. at 2.  Under a tip credit system, an employer may pay an employee less than the standard minimum wage as long as the employee receives tips sufficient to ensure the employee ultimately receives the minimum wage for each hour worked.  *See Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 108 (D.D.C. 2018).  "An employer may only avail itself of the tip credit if it informs its employees of the [credit] and allows them to retain all of their tips, except that an employer may require employees to pool their tips with other employees who 'customarily and regularly receive tips.'"  *Camara v. Mastro's Rests. LLC*, 340 F. Supp. 3d 46, 50 (D.D.C. 2018) (quoting 29 U.S.C. § 203(m)(2)(A)).  The plaintiffs allege that Il Canale "failed to provide notice to Plaintiffs" regarding tip-credit and other wage related requirements; failed to permit the plaintiffs to retain all gratuities they received; and "unlawfully deducted or assigned Plaintiffs' wages by way of shift fees, kickbacks, and tip assignments in violation of District of Columbia law."  Pls.' Mot. at 2–3.  According to the plaintiffs, the defendants also failed to compensate them at the required rate for all overtime hours worked each week.  *Id.* at 3.

Il Canale employed at least 103 tipped employees at its restaurant from April 6, 2017 through April 6, 2020.  Defs.' Response to Pls.' First Set of Interrogatories, No. 8, Dkt. 23-3.  55 of these employees were servers, 43 were bussers, and 5 were bartenders.  Pls.' Mot. at 4.  Based on conversations with other tipped employees and a review of their paystubs, Guzman and Aboubacar, through affidavits filed with the Court, claim to have firsthand knowledge that other

Il Canale employees faced similar unlawful employment practices.  Guzman Aff. at 1;
Aboubacar Aff. at 1.

The plaintiffs filed this lawsuit on August 2, 2019 seeking to recover damages for unpaid
wages plus liquidated damages, pre- and post-judgment interest, and attorney's fees and costs.
*See* Compl., Dkt. 1; Am. Compl., Dkt. 16.  The plaintiffs have now moved to obtain conditional
certification of a collective action for all three counts of their amended complaint, which the
defendants oppose.  *See* Pls.' Mot.; Defs.' Opp'n, Dkt. 29.

## II.   LEGAL STANDARDS

The FLSA authorizes plaintiffs seeking to recover unpaid wages to pursue a collective
action by suing on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  The
FLSA's collective action procedures are minimal and require only that (1) employees be
similarly situated, and (2) other employees who seek to be a party to the collective action opt in
to the lawsuit by filing their written consent in the court where the action is pending.  29 U.S.C.
§ 216(b).  Rule 23 of the Federal Rules of Civil Procedure, which generally governs class-action
lawsuits, does not apply to FLSA collective actions.  *See*, *e.g.*, *Thompson v. Linda and A., Inc.*,
779 F. Supp. 2d 139, 143 (D.D.C. 2011).  Both the D.C. Payment and Collection of Wages Law
and the D.C. Minimum Wage Act Revision Act permit collective actions that are "[c]onsistent
with the collective-action procedures of the Fair Labor Standards Act."  D.C. Code § 32-
1308(a)(1)(C)(iii); D.C. Code § 32-1012(a).

Courts follow a two-stage process to assess whether an FLSA collective action should be
certified.  *See*, *e.g.*, *Castillo v. P & R Enters.*, 517 F. Supp. 2d 440, 445 (D.D.C. 2007).  In the
first stage, referred to as "conditional certification," "the court mak[es] an initial determination to
send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs

with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). At this stage, plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks omitted). "[A]ll that is needed is some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected a plaintiff and the manner in which it affected other employees." *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014) (alterations and internal quotation marks omitted). The standard of proof is low at this stage because its purpose is "merely to determine whether similarly situated plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). "If a plaintiff can make this showing, a court will conditionally certify the class." *Ayala*, 12 F. Supp. 3d at 170.

If the court conditionally certifies the class, the second stage tasks the court with determining, "on a fuller record," whether the collective action "may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. If the court later finds that the opt-in plaintiffs are not similarly situated, the court may dismiss their claims without prejudice and "de-certif[y]" the lawsuit. *Id.* "It is at this stage that a court's inquiry is typically more searching." *Guevara v. Spartan Enters.*, No. 20-cv-1383, 2020 WL 6870007, at *3 (D.D.C. Nov. 23, 2020).

At all times, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). The Court therefore must exercise its duty to "ensur[e] that notice to putative class members is timely, accurate, and

4

informative" when considering the motion.  *Stephens*, 291 F. Supp. 3d at 105 (internal quotation marks omitted).

## III.   ANALYSIS

The plaintiffs' motion seeks the conditional certification of a class of "all current and former tipped bussers, servers, and bartenders" who worked at Il Canale from April 6, 2017 to April 6, 2020, Pls.' Mot. at 4, 22; an order requiring the defendants to provide "the names, last known home addresses, email addresses (business and home), home and cellular telephone numbers, and last four digits of the social security numbers" of all potential class members, *id.* at 22; approval of the proposed Notice to Potential Plaintiffs, Dkt. 23-7, *see* Pls.' Mot. at 23; permission to mail and email notice of the purported class to all potential class members, *id.*; and an order directing the defendants to post at Il Canale's office a notice and a consent form for the purported class, *id.*

### A.  Conditional Certification

To obtain conditional certification and the Court's approval to send notices to potential class members, the plaintiffs must make "a modest factual showing" that they and the other potential class members "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted).  In other words, "the conditional-certification standard turns on whether plaintiffs have . . . put forth a common legal theory upon which each member is entitled to relief."  *Stephens*, 291 F. Supp. 3d at 109 (internal quotation marks omitted).

According to the plaintiffs, they and the purported class were subjected to eight illegal policies, falling broadly into four categories.  *See* Pls.' Reply at 3–4, Dkt. 30.  First, the defendants failed to (1) pay tipped employees overtime wages, even when they worked more

than 40 hours in a week. *Id.* Second, the defendants failed to (2) pay employees the effective tip-credit minimum wage. *Id.* Third, the defendants failed to qualify for the tip credit because they failed to allow employees to retain all tips (3) by withholding some tips during lunch shifts and (4) by subjecting tipped employees to a system of fines. *Id.* And finally, the defendants failed to qualify for the tip credit because they did not provide employees with a series of required notices, including (5) notice of the rate and basis of their pay, (6) notice of the defendants' tip-sharing policy, (7) notice that employees could retain all tips; and (8) notice of the percentage by which tips paid via credit card were reduced. *Id.* Because the plaintiffs have put forth "a series of policies that allegedly caused" violations of law "in different ways," rather than a single policy, the Court will address the plaintiffs' showing as to each policy or practice separately. *See Stephens*, 291 F. Supp. 3d at 109.

### 1. *Overtime Pay*

The Court finds that the plaintiffs have cleared the low hurdle of showing that the defendants failed to pay tipped employees—servers, bartenders, and bussers—the appropriate amount of overtime wages.

To support their claim that Il Canale failed to pay overtime wages, the plaintiffs rely on affidavits from two individuals—a busser and a server who occasionally bartended—both of whom assert that they were not paid overtime wages and that they spoke with and reviewed the paystubs of other tipped employees who were treated the same. *See* Guzman Aff. ¶¶ 6, 8–9; Aboubacar Aff. ¶¶ 5, 7–8. "This is a truly modest showing based on hearsay," *see* Mem. Op. & Order at 5, Dkt. 15, *Izaguirre v. Hunter Allied of Maryland, Inc.*, No. 18-cv-965 (D.D.C. Nov. 13, 2018), but at this early stage, "pleadings and affidavits may be used to meet the 'low standard of proof' for conditional certification," *id.* (quoting *Myers*, 624 F.3d at 555). Because the

submitted affidavits and documents rise above pure speculation, *see Ayala*, 12 F. Supp. 3d at 170, the plaintiffs have made the required showing with respect to their overtime pay claim.

### 2. *Failure to Pay Tip-Credit Minimum Wage*

The plaintiffs have not met the bar with respect to their claim that the defendants failed to pay the "proper 'tip-credit minimum wage,' as required by D.C. Code § 32-1003(f)(1)."  Pls.' Mot. at 12.

According to the plaintiffs, the "[d]efendants would generally adopt D.C.'s tip-credit minimum wage a month or more after [a] new rate was enacted" and would sometimes then "inexplicably" "regress to paying a lower rate."  *Id.*  But the plaintiffs do not allege that these polices applied to anyone other than themselves.  *See generally*, Am. Compl.  Nor do their affidavits assert that other employees were not paid the appropriate tip-credit minimum wage.  *See* Guzman Aff.; Aboubacar Aff. ¶ 20 ("Il Canale paid *me* in an ad hock [sic] manner, whereby *my* hourly rate would go up or down without explanation." (emphasis added)).  As a result, the plaintiffs "have failed to produce any evidence that there was a common practice [concerning the tip-credit minimum wage] covering the entire proposed class."  *Stephens*, 291 F. Supp. 3d at 105, 107 (internal quotation marks omitted) (denying conditional certification as to "servers, wait staff, and bartenders" where the plaintiffs only "submitted declarations . . . from servers" and those declarations only contained allegations concerning policies that related to servers).  Thus, the Court will deny certification with respect to the plaintiffs' tip-credit minimum wage claim.

### 3. *Failure to Allow Employees to Retain All Tips*

The plaintiffs allege that the defendants unlawfully retained employees' tips in two ways. First, according to the plaintiffs, the defendants retained employees' tips by imposing a system of fines.  *See* Guzman Aff. ¶ 16.  Specifically, the defendants fined bartenders and servers

whenever they made a mistake on an order or forgot to take a customer a menu in a timely

manner, *see* Aboubacar Aff. ¶¶ 18–19, and the defendants fined *all* tipped employees—including

bussers—for using their cellphones during work hours, *id.* ¶ 18, or arriving late to work, Guzman

Aff. ¶ 16.  Though certain aspects of the alleged fine policy did not apply to all tipped

employees, the fines were sufficiently similar for the Court to conclude—at least at this early

stage—that all tipped employees are similarly situated with regards to the fines.  *See Camara*,

340 F. Supp. 3d at 56 ("Plaintiffs need show only that their positions are similar, not identical, to

the positions held by the putative class members.").

Second, the plaintiffs claim that the defendants unlawfully retained a percentage of the

employees' tip pool by compensating tipped employees with lunches instead of tips.  *See*

Aboubacar Aff. ¶ 17.  But a close reading of Aboubacar's affidavit reveals that "there was no

bartender on duty" during lunch, *id.*, and so it is not possible that bartenders were subject to

defendant's alleged policy of retaining tips during lunch.  As a result, the plaintiffs "have not

shown that bartenders," bussers, "and servers have the same claim, much less that they are

similarly situated."  *See Stephens*, 291 F. Supp. 3d at 109.

The Court thus will conditionally certify a class of servers, bartenders, and bussers as to

the claim that the defendants, through a system of fines, failed to allow employees to retain their

tips.  It will, however, narrow the plaintiffs' purported class to include only servers and bussers

with respect to the claim that the defendants unlawfully retained a percentage of the employees'

tip pool by compensating tipped employees with lunches in lieu of tips.  *See id.* at 112 (limiting

class to employees who worked at restaurants in D.C. and Maryland when the plaintiffs failed to

present evidence of a similar policy at Virginia locations); *Dinkel v. MedStar Health, Inc.*, 880 F.

Supp. 2d 49, 55 (D.D.C. 2012) (excluding employees who worked at six hospitals from

purported class where the plaintiffs failed to "present any evidence that there was a common practice at those six hospitals").

### 4. *Failure to Provide Proper Notice*

The plaintiffs have shown that other servers, bartenders, and bussers are similarly situated with regards to the defendants' failure to provide the statutorily required notices.  First, the plaintiffs correctly note that D.C. law mandates that "[e]very employer" is required to "furnish to each employee" a notice concerning their rate of pay, the basis of that rate, the timing of pay, and relevant business and employment information, such as the name of the employer and the address of its main office.  *See* D.C. Code § 32-1008(c).  D.C. law further mandates that, in order to qualify to pay "tipped minimum wage," employers must inform tipped employees that they can "retain all tips received," or, "[i]f tips are shared," employers are required to provide "the employer's tip-sharing policy" as well as "[t]he percentage by which tips paid via credit card [are] reduced by credit card fees."  D.C. Code § 32-1003(f)–(g).

The plaintiffs assert that *no* employee received these notices.  *See* Guzman Aff. ¶¶ 10–11, 13–14; Aboubacar Aff. ¶¶ 9–10, 12–14.  The defendants dispute the plaintiffs' claims as a factual matter, *see* Russoniello Aff. at ¶¶ 4–5, Dkt. 29-1, but at this stage, "district courts are advised to refrain from resolving factual disputes," *Camara*, 340 F. Supp. 3d at 57 (internal quotation marks omitted).  The plaintiffs have thus met their minimal burden of showing that the defendants' failure to provide notice was "sufficiently widespread to justify preliminary certification."  *See Harris v. Med. Transp. Mgmt., Inc.*, 317 F. Supp. 3d 421, 425 (D.D.C. 2018).

\*\*\*

In sum, the Court will grant conditional certification with respect to the following claims as they relate to all bussers, servers, and bartenders who worked at Il Canale from April 6, 2017

to April 6, 2020:[1] (1) the overtime pay claim; (2) the tip-retention claim based on fines imposed; and (3) the notice claims. The Court also will grant conditional certification for a class of bussers and servers who worked at Il Canale from April 6, 2017 to April 6, 2020 as to the tip-retention claim based on the defendants' practice of compensating workers through lunches in lieu of tips. Finally, the Court will deny certification as to the claim that the defendants failed to pay the effective tip-credit minimum wage.

### B. Proposed Collective Action Notice

The plaintiffs also request that the Court approve their proposed notice to potential opt-in plaintiffs, which is attached to their motion as Exhibit 7, Dkt. 23-4. *See* Pls.' Mot. at 23.

"Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion." *Guevara*, 2020 WL 6870007, at *4. The Court has a managerial role in "monitoring preparation and distribution of the notice" to "ensure that it is timely, accurate, and informative." *Hoffmann-La Roche, Inc.*, 493 U.S. at 172.

While the plaintiffs' proposed notice provides most of the necessary information, its format and structure are less than clear, and the notice is not consistent with this opinion. The Court therefore will direct the parties to confer, and thereafter, the plaintiffs shall refile a proposed notice that addresses these issues. In addition to conforming with this opinion, the revised notice shall make clear that it is a notice of a collective action lawsuit against the

---

[1] The defendants argue that, because the plaintiffs did not work at Il Canale throughout the putative class period, the Court should limit the putative class "to bussers employed by Il Canale from April 6, 2017 to July 14, 2019 and to servers and bartenders employed by Il Canale from April 6, 2017 to November 1, 2018." Defs.' Opp'n at 16. But other courts have rejected similar arguments, reasoning that differing "dates of employment do not necessarily create dissimilarity under the FLSA." *See Stephens*, 291 F. Supp. 3d at 120 (quoting *Hallissey v. Am. Online, Inc.*, No. 99-cv-3785, 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) (internal quotation marks omitted)).

defendants and that its contents have been authorized by the Court; it shall also explain the applicable statute of limitations to potential opt-in plaintiffs and include appropriate headings. *See, e.g., Izaguirre v. Hunter Allied of Maryland, Inc.*, No. 18-cv-0965, Dkt. 17.

### C.  Production of Contact Information

To provide notice to potential opt-in plaintiffs, the plaintiffs seek an order requiring the defendants to produce "the names, last known home addresses, email addresses (business and home), home and cellular telephone numbers, and last four digits of the social security numbers" of all potential class members.  Pls.' Mot. at 22–23.

"Decisions in this Circuit have reached different conclusions on whether email addresses and phone numbers are discoverable in connection with collective-action notice procedures." *Stephens*, 291 F. Supp. 3d at 121.  Although "[t]he trend appears to be toward ordering the production of at least some of this information," *id.*, courts have rejected requests for telephone numbers and email addresses when there has been no showing of need and when it is "in the interest of protecting the privacy interests of the members of the proposed collectives," *Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 32 (D.D.C. 2016); *see also Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 97 (D.D.C. 2013) (concluding that "the disclosure of phone numbers and dates of birth implicates privacy concerns and, in the Court's view, should not be required absent particularized need"); *Galloway v. Chugach Gov't Servs., Inc.*, 263 F. Supp. 3d 151, 159 (D.D.C. 2017) (limiting production to "names and residential addresses").  Courts in this district also have uniformly rejected requests for social security numbers without a showing of particularized need.  *See, e.g., Harris*, 317 F. Supp. 3d at 426; *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 212–13 (D.D.C. 2018) ("Courts are 'cautious when it comes to social

security numbers, which implicate serious privacy concerns.'" (quoting *Eley v. Stadium Grp.*, No. 14-cv-1594, 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015))).

Here, the Court will order disclosure of the potential opt-in plaintiffs' names, mailing addresses, and email addresses. "Courts routinely order the production of names and addresses in collective actions." *Blount*, 945 F. Supp. 2d at 97. And email addresses are likely to be particularly useful for contacting individuals that work in the restaurant industry. *See Stephens*, 291 F. Supp. at 122 (approving notice by email because "electronic notice [was] justified. . . in light of the special characteristics of the restaurant industry"). At this time, however, the Court will not order the defendants to provide telephone numbers or partial social security numbers for potential opt-in plaintiffs because the plaintiffs have not made the requisite showing that would justify the disclosure of this information. *See Harris*, 317 F. Supp. 3d at 426 (declining to order production of social security numbers); *Camara*, 340 F. Supp. 3d at 60 ("[D]isclosure of social-security numbers is unnecessary at this stage . . . because it could compromise putative Plaintiffs' privacy without any countervailing benefit."); *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 7 (D.D.C. 2008) (denying production of phone numbers "[b]ecause plaintiffs ha[d] not specially justified their need for access to putative class members' phone numbers").

### D.  Notice Method

The Court also approves notice by U.S. mail and email, but will not require the defendants to post a notice in their place of business. Such a notice "could imply Defendants' endorsement of the Notice or lead to situations in which Defendants were the ones answering questions about the Notice or lawsuit, when these are tasks that Plaintiffs' counsel should (and no doubt wish to) undertake." *Ayala*, 12 F. Supp. 3d at 173. If delivery by U.S. mail and email

prove to be insufficient means to notify potential plaintiffs, the Court will reconsider the plaintiffs' request.

### E.  Opt-In Method

Finally, the Court will approve the plaintiffs' proposal to allow potential plaintiffs 60 days to opt in to the lawsuit.  *See Ayala*, 12 F. Supp. 3d at 173 (noting that courts permit 60 and 90 days for plaintiffs to opt in).  The Court also will approve the plaintiffs' proposed opt-in form.

### CONCLUSION

For these reasons, it is **ORDERED** as follows:

1.     The Motion to Conditionally Certify a Collective Action and for Approval of and Facilitation of Notice to Potential Class Members, Dkt. 23, is **GRANTED IN PART** and **DENIED IN PART**, as set forth in the foregoing opinion.

2.     The plaintiffs' request to approve the proposed notice is **DENIED WITHOUT PREJUDICE**.  The parties shall confer, and thereafter the plaintiffs shall refile a proposed notice consistent with this Memorandum Opinion and Order.

3.     The plaintiffs' request to notify potential plaintiffs by U.S. mail and electronic mail is **APPROVED**.

4.     The proposed duration of 60 days for potential plaintiffs to opt in to the collective action and the proposed opt-in form are **APPROVED**.


DABNEY L. FRIEDRICH
United States District Judge

June 14, 2021